UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAON ROBINSON, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>THE CHEFS' WAREHOUSE,<br><br>　　　　　Defendant. | Case No. 3:15-cv-05421-RS (KAW)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SANCTIONS; ORDER REFERRING MICHAEL HOFFMAN TO THE STANDING COMMITTEE ON PROFESSIONAL CONDUCT FOR DISCIPLINARY PROCEEDINGS**<br><br>Re: Dkt. No. 59 |

On January 12, 2017, Plaintiff Shaon Robinson appeared at his noticed deposition. The deposition was suspended by Defense counsel Michele Beilke due to the conduct of Plaintiffs' counsel Michael Hoffman.

On February 2, 2017, Defendant filed a motion for sanctions against Mr. Hoffman pursuant to Federal Rule of Civil Procedure 30(d)(2), 28 U.S.C. § 1927, and the Court's inherent authority.

On March 16, 2017, the Court held a hearing, and, after careful consideration of the parties' arguments, and moving papers, and for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion for sanctions, and refers Mr. Hoffman to the U.S. District Court for the Northern District of California's Standing Committee on Professional Conduct for further investigation pursuant to Civil Local Rule 11-6.

## I.  BACKGROUND

Plaintiffs Shaon Robinson and Sean Clark assert individual and class action claims against Defendant The Chef's Warehouse West Coast, LLC, alleging wage and hour violations, as well as various discrimination claims. The proposed class consists of "[a]ll persons employed by Defendant [ ] in the State of California as a Driver, Driver Trainer, or Dispatcher at any time on or

1  after October 26, 2011." (Second Am. Compl. ¶ 24.)

2  Defendant noticed Plaintiff Shaon Robinson's deposition for January 12, 2017 in San
3  Francisco, California. (Decl. of Michele J. Beilke, "Beilke Decl.," Dkt. No. 60 ¶ 2.) Defendant's
4  counsel flew from Los Angeles, California to take the deposition, and Human Resources Director
5  Lori Mulcare flew from Portland, Oregon to attend the deposition as Defendant's corporate
6  representative. (Beilke Decl. ¶ 3; Decl.of Lori Mulcare, "Mulcare Decl.," Dkt. No. 63 ¶ 2.)
7  Michael Hoffman attended the deposition on behalf of Plaintiff.  Also in attendance were a court
8  reporter and a videographer, both of whom were women. (Beilke Decl. ¶¶ 3, 10; Decl. of Cassia
9  Leet, "Leet Decl.," Dkt. No. 61 ¶¶ 1, 3.)

10  During the course of the deposition, Mr. Hoffman repeatedly insulted Ms. Beilke,
11  improperly objected to numerous questions, and, at one point, threw his hands in the air, paced,
12  and stood in the corner with his back to the deposition. (*See* Beilke Decl. ¶¶ 4-8; Mulcare Decl. ¶
13  4; 1/12/17 Dep. Tr. of Shaon Robinson, "Robinson Dep.," at 9:10-13.) Mr. Hoffman commented
14  on the record that the female energy in the room was conspiring against him. (Leet Decl. ¶ 5;
15  Robinson Dep. at 24:4-25:18.)  Ms. Beilke, Ms. Mulcare, and videographer Cassia Leet all found
16  Mr. Hoffman's behavior to be erratic and threatening, they feared for their safety, and believed
17  that Mr. Hoffman may be under the influence. (Beilke Decl. ¶ 9; Mulcare Decl. ¶ 4; Leet Decl. ¶¶
18  4, 6, 8.)  In fact, Ms. Leet was so intimidated by Mr. Hoffman that she was not comfortable asking
19  him to wear a microphone. (Leet Decl. ¶ 7.) As a result, Mr. Hoffman voice was not amplified as
20  much as Ms. Beilke, who was wearing a microphone, so the video does not necessarily reflect the
21  fact that Mr. Hoffman raised his voice several times. *Id.* Ms. Leet later emailed her employer,
22  Veritext, advising them that she "did not feel safe in the room, and [] put in a request to never
23  work at a deposition involving Mr. Hoffman again." (Leet Decl. ¶ 6.)

24  The parties took a break, (Beilke Decl. ¶ 10.) During the break, Ms. Beilke exited the
25  conference room, followed by the court reporter, who told Ms. Beilke that "she feared for our
26  safety and was uncomfortable proceeding with the deposition." *Id.* Shortly thereafter, the
27  videographer came out and said that she was scared because Mr. Hoffman was making
28  disparaging comments about "female energy" and she did not want to be alone with him in the

2

room. (Beilke Decl. ¶ 10; Leet Decl. ¶ 6.) After returning from the break, Ms. Beilke stated that she was suspending the deposition and seeking a protective order. (Beilke Decl. ¶ 10; Robinson Dep. at 23:16-21.) Mr. Hoffman repeatedly insisted on contacting the undersigned pursuant to the Court's Standing Order to address the dispute prior to suspending the deposition. (Robinson Dep. at 25:7-18, 27:12-28:13; Decl. of Michael Hoffman, "Hoffman Decl.," Dkt. No. 64-1 ¶¶ 27-28.) Mr. Hoffman was combative and refused to allow her to go off the record. (Robinson Dep. 29:5-20.) He then proceeded to insult her:

> Page 30
> 20 **MR. HOFFMAN:** -- if you can't do your
> 21 job, Counselor, then you should -- should maybe
> 22 find another job. Because this is your job to ask
> 23 questions. If you can't do your job, then again,
> 24 find another one. That's right. That's right.
> 25 You sit here now --
>
> Page 31
> 1 **MS. BEILKE:** Don't -- don't --
> 2 **MR. HOFFMAN:** -- like a professional.
> 3 **MS. BEILKE:** Do not threaten me.
> 4 **MR. HOFFMAN:** I can't believe you -- I
> 5 can't believe you are doing this. You are, like,
> 6 so sad. You call yourself a lawyer?
> 7 **MS. BEILKE:** Keep going, Mr. Hoffman.
> 8 (Simultaneously speaking.)
> 9 **MR. HOFFMAN:** I just can't believe -- I
> 10 just can't -- I'm going to -- I'm going to call the
> 11 court on me -- I'm going to call the court on you.
> 12 You are so thin-skinned. You can't ask a question.
> 13 I'm shocked. I am just shocked. I'm going to call
> 14 the court right now. I'm going to see what's up.
> 15 I'm waiting for -- I'm waiting for the number from 10:36:10
> 16 my office. We are going to call the court. This
> 17 is a joke.

(Robinson Dep. at 30:20-31:17.)

Mr. Hoffman stood up again and blocked the only exit from the conference room. (Beilke Decl. ¶ 11.) Mr. Hoffman then called Ms. Beilke a "coward" for suspending the deposition. (Robinson Dep. 31:25-32:2.) Ms. Beilke left the conference room, but Mr. Hoffman did not. (Beilke Decl. ¶ 12; *see* Robinson Dep. at 35:24-44:19.) Ms. Beilke had to call security to convince Mr. Hoffman to leave the premises, which he refused to do before giving a verbal statement which was recorded by the videographer. (*See* Beilke Decl. ¶ 12; Robinson Dep. at

3

1   35:24-44:19; Dep. Video, Hoffman Decl., Ex. M at 11:04-11:06.)

2   On January 18, 2017, Defendant filed a motion for administrative relief regarding Mr.
Hoffman's conduct at the deposition. On January 25, 2017, the administrative motion was
terminated by the undersigned and Defendant was ordered to file a formal motion for sanctions.

On February 2, 2017, Defendant filed a motion for sanctions against Mr. Hoffman pursuant to Federal Rule of Civil Procedure 30(d)(2), 28 U.S.C. § 1927, and the Court's inherent authority. (Def.'s Mot., Dkt. No. 59.) On February 16, 2017, Plaintiffs filed an opposition, which was supported by a declaration by Plaintiff Shaon Robinson. (Pls.' Opp'n, Dkt. No. 64; Decl. of Shaon Robinson, "Robinson Decl.," Dkt. No. 64-2.) On February 23, 2017, Defendant filed a reply. (Def.'s Reply, Dkt. No. 68.)

## II. LEGAL STANDARD

A court may impose sanctions against an attorney personally for conduct at a deposition under Federal Rule of Civil Procedure 30(d)(2), 28 U.S.C. § 1927, and the Court's inherent authority. *See Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996) (citing *Trust Corp., v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983).

Rule 30(d)(2) provides for sanctions against one who "impedes, delays or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Rule 30(d)(2) sanctions do not require a finding of bad faith. *BNSF Ry. Co. v. San Joaquin Valley Rr. Co.*, 2009 WL 3872043, at *3 (E.D. Cal. Nov. 17, 2009). The advisory committee notes to Rule 30(d)(2) note that the rule "explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction." The note further provides that the "sanction may be imposed on a non-party witness as well as a party or attorney, but is otherwise congruent with Rule 26(g)." Rule 26(g), in turn, provides that when conduct violates the Rule, the Court "must impose an appropriate sanction[,]" which "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). The sanctions under Rule 30(d)(2) "may include attorney's fees incurred as a result of the improper conduct and the necessity of filing a motion with the Court." *BNSF Ry. Co.*, 2009 WL 3872043, at *3 (citations omitted). Sanctions under Rule 30(d)(2) are discretionary. *See Batts v. Cnty. of Santa*

4

*Clara*, 2010 WL 545847, at *2 (N.D. Cal. Feb. 11, 2010). Courts have imposed sanctions on attorneys for frustration a deponent's examination and unnecessarily prolonging proceedings under Rule 30(d)(2). *See, e.g., Morales*, 204 F.R.D. at 57.

Title 28 U.S.C. § 1927 authorizes sanctions against "[a]ny attorney or other person admitted to conduct cases in any court of the United States [.]" Section 1927 sanctions can only be imposed upon individual attorneys. *Kaass Law Firm v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293-94 (9th Cir. 2015) (citations omitted). For Section 1927 sanctions, "[t]he key term in the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). A "finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, and a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *Id.* (citations omitted). "[W]ith § 1927 as with other sanctions provisions, [d]istrict courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012) (internal quotation marks and citation omitted).

Finally, under its inherent powers, a court may impose sanctions where a party has willfully disobeyed a court order, or where the party has "acted in bad faith, vexatiously, or for oppressive reasons." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014) (citation omitted). These powers, however, "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991). Accordingly, the bad-faith requirement sets a "high threshold," *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997), which may be met by willful misconduct, or recklessness that is coupled with an improper purpose. *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). It is the moving party's burden to demonstrate that the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose. *See Burnett v. Conseco, Inc.*, 87 F. Supp. 3d 1238, 1249 (N.D. Cal. 2015).

### III. DISCUSSION

#### A. Motion for Sanctions

Defendant seeks sanctions against Plaintiffs' counsel Michael Hoffman pursuant to Federal Rule of Civil Procedure 30(d)(2), 28 U.S.C. § 1927, and the Court's inherent authority based on his conduct at the January 12, 2017 deposition of named plaintiff Shaon Robinson. (Def.'s Mot. at 1.) It is undisputed that courts may impose sanctions against an attorney personally. *See Erickson v. Newmar Corp.*, 87 F.3d 298, 301 (9th Cir. 1996) (citing *Trust Corp., v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983).

As an initial matter, Plaintiffs argue that counsel should not be sanctioned, because defense counsel's conduct regarding discovery generally led to the instant dispute. (Pls.' Opp'n at 6-7.) In support of this position, Plaintiffs' counsel attached a number of exhibits to his declaration that pertain to other discovery disputes. (*See* Decl. of Michael Hoffman, "Hoffman Decl.," Dkt. No. 64-1 ¶¶ 4-17, Exs. A-J.) While the Court understands that discovery in this case has been challenging, those disputes are not before the Court. Furthermore, as discussed below, no number of disputes or perceived professional misconduct justifies Mr. Hoffman's actions, in which he made disparaging remarks to opposing counsel, repeatedly insulted her and called her names. *See* discussion *infra* Part III.A.i.b. Accordingly, the Court will not consider general discovery-related events that predated the deposition in ruling on the motion for sanctions.

#### i. Rule 30(d)(2)

Defendant seeks reimbursement of attorneys' fees and costs under Rule 30(d)(2), which provides for sanctions against one who "impedes, delays or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). A finding of bad faith is not required, and the award of sanctions "may include attorney's fees incurred as a result of the improper conduct and the necessity of filing a motion with the Court." *BNSF Ry. Co.*, 2009 WL 3872043, at *3 (citations omitted).

##### a. Mr. Hoffman repeatedly obstructed the deposition.

No neutral arbiter could find that Mr. Hoffman did not obstruct the deposition of Plaintiff Shaon Robinson. He was combative from the moment the deposition began. In response to Mr.

Hoffman's need to finish before 5:00, Ms. Beilke stated that "we will do our absolute best to finish up a line of questioning by, you know, 4:55, 5:00 o'clock." (Robinson Dep. at 7:13-15.) This was apparently very offensive to Mr. Hoffman, who proceeded to interrupt her, call her unprofessional, and threaten her:

> Page 7
>
> 25 **MR. HOFFMAN:** That's not professional to
>
> Page 8
>
> 1 raise your voice. Because if you start raising
> 2 your voice, then I'll sense anger which may trigger
> 3 my own anger.
> 4 So if you kindly would stop raising your
> 5 voice, that would be appreciated. Because if I
> 6 raise my voice, it's much more alarming and I would
> 7 prefer not to do that, so kindly quit raising your
> 8 voice, please.
> 9 **MS. BEILKE:** Okay. I'm going to ask that
> 10 you please not interrupt me when I am speaking.
> 11 You will have your opportunity to respond to what
> 12 I'm saying when I am finished and --

(Robinson Dep. at 7:25-8:12.) Mr. Hoffman exhibited an extreme reaction by launching into a diatribe on "basic human rights and respect" based on the possibility that he could be kept past 5:00 p.m.:

> 13 **MR. HOFFMAN:** Counselor, what we have
> 14 right here is an issue of basic respect.
> 15 If -- if you have a basic disrespect for
> 16 a person that says that they have a commitment at
> 17 5:00 p.m., then already I'm sensing terrible issues
> 18 throughout the day. Because 5:00 p.m., if that's
> 19 not respected, I shudder to think what else will
> 20 not be respected.
> 21 So, again, basic human rights will be
> 22 respected here today. Because if basic human
> 23 rights are not respected here today, we will leave
> 24 today. And you can come back when you think you
> 25 can respect our basic rights; is that understood,
>
> Page 9
>
> 1 Counselor?
> 2 **MS. BEILKE:** Okay. First of all --
> 3 **MR. HOFFMAN:** Is that understood, first
> 4 of all? Do you understand what I am saying?
> 5 **MS. BEILKE:** I am not here to answer your
> 6 questions.
> 7 **MR. HOFFMAN:** Then don't talk to me

> 8 directly anymore, I'm -- don't talk -- don't speak
> 9 to me directly anymore.

(Robinson Dep. 8:13-9:9.) In opposition, Mr. Hoffman explains that he had a child-care commitment, and that the above exchange was a "kind[] request[] that we proceed in a respectful manner." (Hoffman Decl. ¶¶ 20-21.) Upon review of the video and certified transcript, nothing about Mr. Hoffman's tone or choice of words could be construed as being respectful. To the contrary, his tone was aggressive and threatening.

Once the deposition proceeded, Mr. Hoffman impeded the deposition by making improper objections. In defending the deposition, an attorney is limited to raising certain objections, such as to form, privilege, and harassment. Plaintiffs argue that Mr. Hoffman's objections were valid. (Pls.' Opp'n at 8.) They were not. First, Mr. Hoffman is not permitted to decide which questions opposing counsel is allowed to ask. Second, many of Mr. Hoffman's objections, including that the questions lacked foundation or relevancy, were without merit. Even so, asking a deponent to identify his name on a complaint in a prior case does not seek a legal conclusion nor does asking about prior claims invoke confidentiality concerns pertaining to a confidential settlement when the complaints themselves are public documents. (Robinson Dep. at 13:10-23; Pls.' Opp'n at 4; *see* Hoffman Decl. ¶ 25.) Apparently these questions, which are permitted, were so offensive that Mr. Hoffman felt the need to launch into another tirade:

> 2 **MR. HOFFMAN:** You really are such a sad
> 3 advocate. Is this all Reed Smith really has for
> 4 Chefs' Warehouse? Is this what you really get for
> 5 your money? This is pathetic. This is really sad.
> 6 She greets me, her head's all over the
> 7 place, flustered just -- just -- just no bearing on
> 8 anything, just throwing things all over the place.
> 9 You are like a little control freak expecting me to
> 10 go along with -- with whatever you want with no
> 11 foundations for your documents. You are out of
> 12 your mind, Counselor.
> 13 If you expect yourself to throw documents
> 14 at my -- at my client that he's never seen before
> 15 and expect yourself to be bolstered by heretofore
> 16 -- completely never seen documents by him. You are
> 17 sorely mistaken, Counselor. I don't know what you
> 18 heard about me, okay, but I'm not a chump. I'm not
> 19 going to take questions with no foundations.
> 20 Okay?

(Robinson Dep. 20:2-20.) Ms. Beilke responded by stating "Okay. So - -" before being

immediately interrupted by Mr. Hoffman, who proceeded to lay out "rules" in an attempt to limit the evidence discussed in the deposition to the instant lawsuit:

> Page 20
>
> 22 **MR. HOFFMAN:** So you need to ask what you
> 23 want to do, but this -- this is not happening.
> 24 Okay?
> 25 We are going to get some rules. Some
>
> Page 21
>
> 1 procedures here and some respect for
> 2 Shaon Robinson. Okay? We are not going to be
> 3 clobbering him with documents that he has never,
> 4 ever even seen before and expecting him to go ahead
> 5 and confirm some of your ludicrous assertions.
> 6 That's not happening.
> 7 Can you ask a question with some
> 8 evidence, something that has to do with this case.
> 9 Then we can participate.

(*See* Robinson Dep. at 20:21-21:9.) The Court notes that the "documents" Plaintiff was "clobbered with," and had purportedly never seen, were complaints in two prior lawsuits in which Mr. Robinson was a named plaintiff, and was represented by Mr. Hoffman. (*See* Robinson Dep. at 15:25-17:11.) Accordingly, Mr. Hoffman's objections were frivolous.

During the course of the deposition, Mr. Hoffman repeatedly interrupted Ms. Beilke, usually to generally attack and insult her. *See* discussion *intra* Part III.A.i.b. At one point, however, he interrupted one of the few questions Ms. Beilke was able to ask Mr. Robinson to ask if someone took his coffee. (Robinson Dep. at 17:12-15.)

Additionally, Mr. Hoffman's physical conduct further impeded the deposition. For example, when Ms. Beilke noted for the record that Mr. Hoffman turned his back to her and her client, and that they were looking at the back of his head, Mr. Hoffman corrected them that they were looking at the back of his "bald head." (Robinson Dep. at 9:10-14.) Mr. Hoffman then decided to stand in the corner, was pacing, and throwing his hands in the air. (Robinson Dep. at 22:22-23:8.) When asked what he was doing, he responded:

> 5 **MR. HOFFMAN:** You are a joke. You are a
> 6 liar. You're misrepresenting what's happening
> 7 here. I'm getting out of the way. You can ask him

a question.

(Robinson Dep. at 23:5-8.) Ms. Beilke understandably initiated a short break. (Robinson Dep. at 23:9-10.) When she came back on the record less than four minutes later, Ms. Beilke announced that she was suspending the deposition. (Robinson Dep. at 23:16-18.) In response, Mr. Hoffman accused Ms. Beilke, Ms. Mulcare, videographer Ms. Leet, and the court reporter of engaging in a conspiracy against him, and threatened Ms. Beilke with sanctions for suspending the deposition:

> Page 24
>
> 4 **MR. HOFFMAN:** No, I will say something
> 5 now. It seemed to me that all four ladies walked
> 6 out of the room and there is a little bit of a
> 7 conspiracy going on by actually official reporters.
> 8 People here who actually have a duty to be neutral.
> 9 Okay? And I saw all the ladies go out at once and
> 10 all the ladies came back together.
> 11 I'm just sensing that there's some kind
> 12 of energy here in the room that was very
> 13 threatening to me personally, accusations were
> 14 leveled throughout that I was raising my voice. A
> 15 picture was trying to be painted that I was somehow
> 16 behaving inappropriately when it seemed that
> 17 lawyers and other people were behaving very
> 18 disrespectfully to me and my client from the gate.
> 19 Especially from the start, at 5:00 p.m.,
> 20 there was a major issue trying to leave by
> 21 5:00 p.m. There was major constraints and
> 22 roadblocks, and then we got on the record and it
> 23 got worse and worse.
> 24 Counsel was trying to portray me in the
> 25 situation that was either outright false -- and
>
> Page 25
>
> 1 actually she lied about my behavior and my level of
> 2 my voice. I mean, she, in fact, was raising her
> 3 voice.
> 4 And now after I take a whole day from my
> 5 schedule and so has Mr. Robinson, take the whole
> 6 day out from his schedule, and you are not prepared
> 7 to follow through with your day. I insist we call
> 8 the chambers right now and get some advice from --
> 9 from the chambers. That's my advice right now. We
> 10 call the magistrate now. Because I've spent my
> 11 whole day here trying to get here, and if you leave
> 12 today, I will seek request for sanctions.
> 13 Because I'm requesting now that we call
> 14 the chambers. We -- and we say, we have a problem
> 15 with -- with you, Ms. Beilke, and you have a
> 16 problem with me, Mr. Hoffman. So you have a

>     17 problem with me; I have a problem with you. Let's
>     18 see what the court says.

(Robinson Dep. 24:4-25:18.)

In opposition, Plaintiffs argue that Defendant's failure to follow the procedural requirements set forth in the Court's Standing Order should preclude sanctions. (*See* Pls.' Opp'n at 7.) Paragraph 17 of the Court's Standing Order states:

> In emergencies during discovery events (such as depositions), any party *may*, after exhausting good faith attempts to resolve disputed issues, seek judicial intervention pursuant to Civil L.R. 37-1(b) by contacting the Court through the courtroom deputy. If the Court is unavailable, the discovery event shall proceed with objections noted for the record.

(Judge Westmore's General Standing Order ¶ 17)(emphasis added.) First, the use of the word "may" renders court intervention optional during discovery events. *Id.* Second, Mr. Hoffman's conduct prevented any good faith attempts to meet and confer. If he was acting in good faith and properly defending the deposition, Mr. Hoffman's objections would have been noted in the record, and he would have permitted his client to answer the questions asked by Ms. Beilke rather than attempting to reframe the questions for his client. (*See* Robinson Dep. at 13:21-23.) In any event, given Mr. Hoffman's bizarre conduct—which is starkly apparent from the video footage and was perceived as threatening by the neutral videographer—no court could reasonably expect Ms. Beilke to remain in the conference room long enough to determine whether the undersigned was available to immediately address the situation. Therefore, while not required, Defendant is excused from not seeking judicial intervention during the discovery event. (*See* Pls.' Opp'n at 14-15.) Moreover, the Court finds that Plaintiffs' argument that Defendant failed to meet and confer prior to filing this motion is without merit in light of Mr. Hoffman's offer to pay defense counsel $4,106.32 prior to the filing of this motion,[1] which was made during the formal meet and confer. (*See* Decl. of Zaher Lopez, Dkt. No. 62 ¶ 8.)

### b. Bad faith

While bad faith is not required to impose sanctions under Rule 30(d)(2), the Court finds the record replete with evidence of bad faith on the part of Mr. Hoffman.[2] Despite Mr. Hoffman's

---

[1] The offer was made after the improperly filed administrative motion.
[2] The Court cannot possibly include every instance of bad faith on the part of Mr. Hoffman, as it

11

protestations to the contrary, the video recording shows that he was acting in such an unprofessional and aggressive manner that there is no justification for his behavior. The fact that he believed that his behavior was not unusual is beyond troubling, as are Mr. Hoffman's efforts to minimize his conduct after the fact. (*See* Pls.' Opp'n at 5; Hoffman Decl. ¶¶ 31-32; Robinson Dep. at 30:1-3.)

Mr. Hoffman repeatedly insulted Ms. Beilke, which included calling her a "complete caricature," a "joke," "confused," "pathetic," a "liar," and "the weakest lawyer I have seen in a very long time." (Robinson Dep. at 19:8-9, 19:17-18, 19:21-22, 19:24-25, 23:5-6, 31:17.) He referred to her as "such a sad advocate" (Robinson Dep. at 20:2-20), and berated her about wasting time, her hourly rate, and the quality of her legal work in one of his many tirades:

```
            MR. HOFFMAN: You are wasting our time.
        25  You're wasting valuable time you can have to
         1  cross-examine Mr. Robinson, because you don't have
         2  the coverage or the know-how or -- or the ability
         3  to formulate a question, so you have to go because
         4  you can't sit here and actually ask him a question.
         5  Is that what you are really telling your
         6  client? How much are you charging this -- this --
         7  this Chefs' Warehouse? At least 500 an hour and
         8  you can't ask a question. Ask a question,
         9  Counselor. Let's see what they get for 500 an
        10  hour.
```

(Robinson Dep. 21:24-22:10.) Again, the Court notes that the documents Plaintiff had never seen that were so offensive to Mr. Hoffman were the complaints in his two prior lawsuits. (*See* Robinson Dep. at 15:25-17:11; *see* discussion *supra* Part III.A.i.a.)

Mr. Hoffman's supporting declaration only serves to express misogynistic views that have no place in the legal profession. Mr. Hoffman believed that the four women, including the neutral court reporter and videographer, were conspiring against them, because they took a break and "glared" at him. (Hoffman Decl. ¶ 27.) Based on the transcript and the declarations filed in support of the motion for sanctions, what Mr. Hoffman interpreted as a "conspiratorial energy" amongst the four women in the room, can be more reasonably interpreted as collective fear at the prospect of further angering a self-described "muscular adult male" who stands at "6'2" and 205

---

has never seen conduct so offensive and unprofessional in a deposition.

lbs." (*See* Hoffman Decl. ¶¶ 27, 30; Robinson Dep. at 24:4-25:18; *see also* Leet Decl. ¶ 6.)

Indeed, videographer Cassia Leet signed a declaration in support of Defendant's motion for sanctions, which she claims she has never done before despite having worked for ten years as a videographer. (Leet Decl. ¶ 9.) Ms. Leet had never previously met Ms. Beilke, Ms. Mulcare or Mr. Hoffman. (Leet Decl. ¶ 3.) Ms. Leet characterized Mr. Hoffman as "appear[ing] to be under the influence of some type of drugs" and acting "in an erratic fashion and flail[ing] his arms around." (Leet Decl. ¶ 4.) Ms. Leet interpreted Mr. Hoffman's actions as "highly unprofessional," displaying aggression and frequently raising his voice, which she perceived as threatening. (Leet Decl. ¶¶ 4-5.) Mr. Hoffman made her so uncomfortable and intimidated that "she did not want to say one word to him or be in the room alone with him." (Leet Decl. ¶ 6.) She has since requested that her employer, Veritext, never assign her to work at a deposition involving Mr. Hoffman again. *Id.* Ms. Leet explained that the video was not a fair representation of Mr. Hoffman's conduct due to the fact that he did not wear a microphone, and Ms. Leet was too intimidated to insist that he wear one. (Leet Decl. ¶ 7.) As a result, while Mr. Hoffman's voice was significantly louder than Ms. Beilke's, Ms. Beilke was wearing a microphone, and her voice appears louder on video. *Id.* Ms. Leet opined that either a neutral monitor sit in on all future depositions or a second videographer should video Mr. Hoffman at all future depositions. (Leet Decl. ¶ 8.)

Defendant's corporate representative Lori Mulcare felt similarly threatened. (Mulcare Decl. ¶¶ 2-5.) She found Mr. Hoffman to be belligerent and his interactions with Ms. Beilke to be "highly offensive." (Mulcare Decl. ¶ 3.) She also found his behavior to be "erratic and volatile" and believed that he may have been under the influence of some substance. (Mulcare Decl. ¶ 4.) She was surprised when Mr. Hoffman accused her of stealing his coffee. (Mulcare Decl. ¶ 4; Robinson Dep. at 17:12-15.) She found his comments on the "female energy" in the room to be disparaging given the implication that the women were "ganging up on him." (Mulcare Decl. ¶ 6.) Plaintiffs have indicated that they wish to take Ms. Mulcare's deposition, and she is concerned "that the same belligerent, aggressive, and intimating conduct that Mr. Hoffman directed at Ms. Beilke at Plaintiff's deposition, will be directed towards [her], [which is] causing [her] anxiety." (Mulcare Decl. ¶ 7.) Ms. Mulcare requests that another attorney take her deposition. *Id.*

13

Mr. Robinson submitted a declaration in support of the opposition to the motion for sanctions. (Decl. of Shaon Robinson, "Robinson Decl.," Dkt. No. 64-2.) Therein, Mr. Robinson stated that, when he entered the conference room, he "felt that all of the women present had been talking about me and that I was an outsider intruding on a group of close friends." (Robinson Decl. ¶ 4.) At the hearing, Mr. Robinson insisted on testifying on his attorney's behalf. He testified that before going on the record, Ms. Beilke was negative towards Mr. Hoffman. He further testified that he found it unusual to see all women in the conference room, and that they appeared to be friends, because they were talking and laughing when he and Mr. Hoffman entered. Mr. Robinson provided no concrete reasons for his assumptions. Nevertheless, as the Court explained, whatever happened before the deposition did not justify Mr. Hoffman's behavior during the deposition. In fact, there are no circumstances that would justify such behavior by a lawyer in a deposition.

The Court finds that the video footage, coupled with the testimony of the witnesses present at the deposition, leaves no doubt that Mr. Hoffman was acting aggressively and unpredictably, and that any fear on behalf of Ms. Beilke, Ms. Leet, and Ms. Mulcare was justified under the circumstances.

Mr. Hoffman's bizarre behavior at the hearing reinforced the conclusions drawn from the video:

> **THE COURT:** In this particular case, I understand why she [Ms. Beilke] felt threatened, I understand why the videographer felt threatened, I understand all of it.
> **MR. HOFFMAN:** Thank you.
> **THE COURT:** So you're not going to stand here and defend yourself? That's what you're telling me?
> **MR. HOFFMAN:** I think you know what you think. I think you're very convinced of your beliefs.
> **THE COURT:** No, these are not my beliefs. This is an actual video that anybody who's able to hear and see will observe.
> **MR. HOFFMAN:** Your Honor, I think on that point, it's possible that we could do this video in front of thirty or forty control group people, males and females, and, with all due respect, Your Honor. It is your mind, your opinion that your worth or your belief or your faith, whatever it is, that is what you are resting your belief that I was the one who was 100% culpable, and I submit that it is difficult to say, and I submit that if we brought thirty or forty people in here and have them view these events, I suggest that it's possible, that different people who had different experiences ---
> **THE COURT:** It has nothing to do with that.
> **MR. HOFFMAN:** may view---
> **THE COURT:** No.

> **MR. HOFFMAN:** Well, again ---
> **THE COURT:** You are a lawyer.
> **MR. HOFFMAN:** Again, I am tapped out, your Honor. I respect the fact that you are convinced, and I have nothing more to say then. I am not standing here trying to change your mind. I'm not trying to do that. . . . It is far more important for me to speak my truth for whatever decision. And that I swear. So all I can do Your Honor is sit here, stand here and tell you my truth, and my feeling of being triggered, and my own threats, threatening behavior that was [unintelligible], and I know that I am a big strong, tall, you know, and I know you're picking up whatever you're picking up, as Ms. Beilke was picking up, and sort of assuming the truth of Michael Hoffman. What's Michael Hoffman going to do? Is he really going to start physically attacking me? Does she feel safe in the room? Does she feel safe with Michael Hoffman as a physical reality? I don't know.
> **THE COURT:** Actually, your physicality is very tangential to any of it. What it has to do with is your actual erratic behavior. The actual name calling, the standing in the corner, the turning your back to the table and talking about them looking at your bald head, and the diatribes, and the streams of consciousness, and all of this kind of stuff that is clear on the video for an hour almost. Where Ms. Beilke got in maybe a few very frustrated "stop interrupting me," and "no, you're not going to tell me what questions to ask," and "no, stop interrupting me," and "okay," several times, and then you going back into your diatribes. That's what that video consists of.
> **MR. HOFFMAN:** The question is, Your Honor, are you convinced?
> **THE COURT:** There is no such deposition.

(FTR 1:19-1:23.) The Court notes that Mr. Hoffman appeared to be on the verge on a mental breakdown at several different points in the hearing. His cadence and tone were such that he would speak abnormally slow at times, and then exhibit flashes of anger and defensiveness, during which he would speak more quickly. In one of many bizarre moments, he started talking about this probably being his last case, because only Mr. Robinson was "keeping him in the game." He said that he is very well off financially, and does not need this work anymore. The Court notes that Mr. Hoffman is counsel of record in three other cases currently pending in the Northern District.

Mr. Hoffman also appeared detached from reality and suggested that others, presumably men, would not perceive his behavior during the deposition to have been threatening or unprofessional.[3] The Court notes that Mr. Hoffman did not take responsibility for his behavior nor

---

[3] It should be noted that the two court security officers (CSOs) in the courtroom became concerned with Mr. Hoffman's behavior and moved closer behind him, and called for two additional CSOs.

admit that he was in the wrong. Instead, he blamed Ms. Beilke for speaking in a "highly caffeinated tone," and implied that the Court's experience as a woman colored its perception that his behavior was unprofessional and threatening, because reality was subjective and based on one's own experiences.

In light of the foregoing, the Court finds that sanctions against Mr. Hoffman, individually, are appropriate under Federal Rule of Civil Procedure 30(d)(2).

### ii. 28 U.S.C. § 1927 and Inherent Authority

Defendant also seeks sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. As the Court found that Mr. Hoffman acted in bad faith and multiplied the proceedings, sanctions are also available under § 1927 and the Court's inherent authority. The Court, however, need not address these alternatives, because sanctions may be awarded under Rule 30(d)(2).

### B. Appropriate Relief

Defendant seeks four types of relief in connection with this motion: 1) monetary sanctions in the amount of $12,956.32 against Mr. Hoffman for attorneys' fees and costs incurred by Defendant due to Mr. Hoffman's misconduct, which led to the suspension of Plaintiff's deposition and subsequent filing of this motion, 2) the preclusion of Mr. Hoffman from taking or defending depositions in this matter, 3) the renewal of Plaintiff Shaon Robinson's deposition such that the full seven hours of deposition under Fed. R. Civ. Proc. Rule 30 are available, and 4) any and all other sanctions that the Court may deem appropriate, including the referral of the matter to the Court's Standing Committee on Professional Conduct under Civil Local Rule 11-6 and/or the State Bar of California's Committee on Professional Responsibility and Conduct (COPRAC) for investigation. (Def.'s Mot. at 1-2, 14.)

### i. Amount of Sanctions

Defendant seeks monetary sanctions in the amount of $12,956.32 against Mr. Hoffman for attorneys' fees and costs incurred by Defendant due to Mr. Hoffman's misconduct. (Def.'s Mot. at 10.) Specifically, Defendant seeks $8,850.00 incurred in connection with the earlier motion for

---

Additionally, one of the U.S. Marshals came to the courtroom and stayed for the remainder of the hearing. The additional security was not requested by the Court.

administrative relief and the instant motion for sanctions. (Lopez Decl. ¶ 7.) This includes $3,600.00 for this motion, and $5,250.00 for work performed in connection with the earlier motion for administrative relief. (Lopez Decl. ¶¶ 2-3.) As an initial matter, the Court finds that the work performed in connection with the earlier motion is not recoverable, because it should have been noticed as a motion for sanctions. The work performed in connection with the instant motion, however, is recoverable.

Zaher Lopez is an attorney at Reed Smith, who graduated from American University, Washington College of Law in 2010. (Lopez Decl. ¶ 4.) He has experience in all aspects of state and federal employment litigation. *Id.* His hourly billing rate is $360.00 per hour, and he spent seven hours on the motion, and expected to spend three hours on the reply, which totals $3,600.00 in attorneys' fees. (Lopez Decl. ¶ 2.) The Court finds that Mr. Lopez's billing rate and amount of time spent are both reasonable under the circumstances.

Ms. Beilke is a partner at Reed Smith, and graduated from University of Southern California School of Law in 1997, and she has experience in all aspects of state and federal employment litigation. (Beilke Decl. ¶ 15.) Her hourly billing rate is $562.50. *Id.* Ms. Beilke incurred travel expenses of $1,138.65 in connection with the deposition, which included $521.88 for airfare, and $616.77 for hotel. (Beilke Decl. ¶ 17.) The deposition lasted one hour. The Court finds Ms. Beilke's hourly rate reasonable.

Defendant's corporate representative, Lori Mulcare, incurred travel expenses in the amount of $1,097.00 in connection with the deposition, which included $266.20 for airfare and $830.80 for hotel. (Mulcare Decl. ¶ 8.)

Other costs incurred include $824.50 for the court reporter and $483.67 for the videographer. (Beilke Decl. ¶ 18, Ex. B.)

Accordingly, the Court awards Defendant $7,706.32 in sanctions for Mr. Hoffman's conduct.

### ii. Whether Mr. Hoffman should be precluded from taking or defending depositions in this matter.

Parties generally have a right to the counsel of their choice. Plaintiffs argument that this

right is based on the Sixth Amendment is misplaced. (Pls.' Opp'n at 14.) The Sixth Amendment concerns criminal defendants, not parties in civil cases, as do the cases upon which Plaintiffs rely, including *Brothers v. Kern*, which provided that "[a]n element of the Sixth Amendment right to counsel is 'the right of a defendant who does not require appointed counsel to choose who will represent him.'" 154 Cal. App. 4th 126, 139 (2007) (citing *United States v. Gonzalez–Lopez,* 548 U.S. 140 (2006)). The California state court in *Brothers* did not find a constitutional violation when a child support order diminished the funds available for the defendant father to pay his criminal attorney of choice. 154 Cal. App. 4th at 139-40. Nonetheless, the undersigned recognizes the general right to choose one's own counsel.

At the hearing, Mr. Hoffman opined that the request to preclude him from taking or defending depositions was tantamount to "throwing him off of the case." When asked whether any of the other attorneys in his office were available to take and defend the depositions, Mr. Hoffman responded that none of the other attorneys were competent.

At the hearing, Ms. Beilke stated that she was uncomfortable even being in the same courtroom as Mr. Hoffman. While the Court recognizes that Mr. Hoffman's behavior created the situation, which was only confirmed by his objectively bizarre behavior at the hearing, at this juncture, Mr. Hoffman should not be precluded from taking or defending depositions in this matter. That said, all depositions taken or defended by Mr. Hoffman shall take place in the Oakland Courthouse. The parties shall contact Susan Imbriani, Judge Westmore's Courtroom Deputy, to schedule a courtroom well in advance of the desired deposition date. The parties should note that court security officers and/or marshals will be present for the duration of any such deposition. Ms. Beilke and Ms. Mulcare should feel safe under those conditions. It should also be noted that all courtrooms are continuously monitored by video in the Marshal's office.

The parties are further advised that should Mr. Hoffman exhibit behavior similar to that of the January 12, 2017 deposition, he will be precluded from taking or defending further depositions in this case, and the court will impose additional sanctions.

### iii. Renewal of Mr. Robinson's Deposition

Plaintiffs do not oppose Defendant's request to restart the clock on Shaon Robinson's

18

deposition, such that the full seven hours are available. (Hoffman Decl. ¶ 33.) Accordingly, the Court GRANTS Defendant's request, and orders that Mr. Robinson's deposition go forward with the clock "restarted."

### iv. Disciplinary Committee Referral

Defendant asks the undersigned to refer Mr. Hoffman to the Court's Standing Committee on Professional Conduct under Civil Local Rule 11-6 and/or the State Bar of California's Committee on Professional Responsibility and Conduct (COPRAC) for investigation. (Def.'s Mot. at 14.) In opposition, Plaintiffs argue that a referral is not appropriate, because it would be an excessive sanction. (Pls.' Opp'n at 12.) The Court disagrees. Mr. Hoffman's conduct is completely and utterly unjustified and troubling. The Court is particularly concerned about Mr. Hoffman's sexist remarks during the deposition and at the hearing on the motion. Plaintiffs' argument that Defendant's failure to define terms such as "unprofessional conduct," "disrespectful conduct," "bad faith," and "harassment" is similarly unavailing. (*See* Pls.' Opp'n at 13.) Moreover, Plaintiffs' contention that Mr. Hoffman properly advised his client not to answer is simply incorrect, as questions about prior claims in prior lawsuits, rather than the terms of a confidential settlement itself, do not invoke confidentiality concerns. *See id.* Thus, Mr. Hoffman not only ran afoul of the Northern District's Guidelines for Professional Conduct, but also basic standards of decorum.

Furthermore, the Court firmly believes that Mr. Hoffman might benefit from mental health treatment and sensitivity training. It was evident from the hearing that he experiences trouble channeling his emotions, and the Court is concerned that he harbors issues, and perhaps even resentment, towards women.

In light of the foregoing, the Court refers Mr. Hoffman to the Court's Standing Committee on Professional Conduct for disciplinary proceedings pursuant to Civil Local Rule 11-6(e). Mr. Hoffman is advised that any similar conduct going forward will be reported to the State Bar of California.

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion for sanctions is GRANTED IN PART

19

AND DENIED IN PART.  Specifically, monetary sanctions are imposed against Mr. Hoffman, individually, in the amount of $7,706.32, to be paid within 30 days of this order. The sanctions will not be passed on to his clients.  Additionally, Mr. Robinson's deposition will go forward, in which Defendant shall have a full seven hours to obtain his testimony.

Mr. Hoffman is referred to the U.S. District Court for the Northern District of California's Standing Committee on Professional Conduct for further investigation pursuant to Civil Local Rule 11-6(e).  Lastly, Defendant's request to preclude Mr. Hoffman from taking or defending depositions is denied.

IT IS SO ORDERED.

Dated: March 21, 2017

KANDIS A. WESTMORE
United States Magistrate Judge