UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAON ROBINSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE CHEFS' WAREHOUSE,<br><br>　　　　Defendant. | Case No. 3:15-cv-05421-RS   (KAW)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION OF DEFENDANT'S MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 85 |

On March 21, 2017, the Court sanctioned Plaintiffs' counsel Michael Hoffman for gross professional misconduct during the January 12, 2017 deposition of Plaintiff Shaon Robinson. (3/21/17 Order, Dkt. No. 78.)  Specifically, monetary sanctions were imposed against Mr. Hoffman personally, he was referred to the Northern District's Standing Committee on Professional Conduct, and the undersigned ordered that all depositions taken or defended by Mr. Hoffman must occur at the Oakland Courthouse to permit court security officers and/or marshals to be present. *Id.* at 18, 20.

On April 4, 2017, Defendant filed a motion for leave to file a motion for reconsideration limited to the Court's decision to permit Mr. Hoffman to take and defend depositions, which was granted on April 17, 2017. Thereafter, Defendant filed the motion for reconsideration.

On June 1, 2017, the Court held a hearing, and, after careful consideration of the parties' arguments, and moving papers, and for the reasons set forth below, GRANTS Defendant's motion for reconsideration.

## I.   BACKGROUND

Plaintiffs Shaon Robinson and Sean Clark assert individual and class action claims against Defendant The Chef's Warehouse West Coast, LLC, alleging wage and hour violations, as well as

various discrimination claims. The proposed class consists of "[a]ll persons employed by Defendant [ ] in the State of California as a Driver, Driver Trainer, or Dispatcher at any time on or after October 26, 2011." (Second Am. Compl. ¶ 24.) Plaintiffs have three attorneys of record: Michael Hoffman, Leonard Emma, and Stephen Noel Ilg. Docket Sheet, *Robinson v. The Chef's Warehouse*, No. 15-cv-05421-RS (N.D. Cal. May 26, 2017).

On February 2, 2017, Defendant filed a motion for sanctions against Mr. Hoffman pursuant to Federal Rule of Civil Procedure 30(d)(2), 28 U.S.C. § 1927, and the Court's inherent authority for his conduct at the January 12, 2017 deposition of named plaintiff Shaon Robinson. (Dkt. No. 59.)

On March 16, 2017, the Court held a hearing on Defendant's motion for sanctions. At the hearing, Mr. Hoffman claimed that none of the attorneys in his office were competent to take or defend depositions in this case. (3/16/17 Hearing Tr., "Tr.," Dkt. 89 at 27:20-28:4.) Co-counsel Leonard Emma similarly stated that he was not capable of taking or defending a deposition in this case, because he generally does written discovery, works with clients, and attends mediations. (Tr. 38:20-40:13.)

The Court ultimately decided to impose monetary sanctions against Mr. Hoffman personally, and he was referred to the Northern District's Standing Committee on Professional Conduct. (3/21/17 Order at 20.) Based on the information available, including the representations of Mr. Hoffman and Mr. Emma at the hearing, the undersigned declined to preclude Mr. Hoffman from depositions at that juncture, but ordered that all depositions conducted or defended by Mr. Hoffman be taken at the Oakland Courthouse, where court security would be present. *Id.* at 18, 20.

The day after the order was issued, *Law360* published an article about the order. (Decl. of Michelle J. Beilke, "Beilke Decl.," Dkt. No. 85-1 ¶ 4, Ex. A.) On March 24, 2017, Ms. Beilke received a voicemail message from an unknown number that stated "You little cunt, I'm coming for you. You better watch your back." (Beilke Decl. ¶ 5, Ex. B.)

Following the entry of the March 21, 2017 order, Ms. Beilke received information, from an anonymous source, of other cases in which Mr. Hoffman had engaged in similar misconduct. (Beilke Decl. ¶ 8-12.) In one case, *Martinez v. Dynaelectric Co.,* No. CGC 08-478110 (Cal.

United States District Court
Northern District of California

1  Super. Ct. May 7, 2009), a discovery referee was appointed to supervise depositions due to Mr.
2  Hoffman's misconduct, which included threatening, berating, and assaulting opposing counsel,
3  who was female. (Beilke Decl. ¶ 10; Dkt. No. 81-4 at 2,10.) Ms. Beilke was informed by another
4  confidential source that Mr. Hoffman had another incident with co-counsel Barbara Figari, in
5  which she described to the State Bar of California, in response to a complaint Mr. Hoffman filed
6  against her, Mr. Hoffman's aggressive behavior towards her that led to her hiding in a bathroom
7  while suffering from an anxiety attack. (Beilke Decl. ¶ 13, Ex. C at 5-7.)

8  On April 4, 2017, Defendant filed a motion for leave to file a motion for reconsideration
9  limited to the Court's decision to permit Mr. Hoffman to take and defend deposition at the
10 Oakland Courthouse, which was granted on April 17, 2017. (Dkt. Nos. 80 & 83.)

11 On April 18, 2017, Plaintiffs' counsel Stephen Noel Ilg sent defense counsel an email
12 proposing that the parties stipulate to him and Mr. Emma conducting and defending all depositions
13 in exchange for continuing all deadlines related to the motion for class certification. (4/18/17 Ilg
14 Email, Beilke Decl., Ex. D.)

15 On April 21, 2017, Defendant filed the motion for reconsideration. (Def.'s Mot., Dkt. No.
16 85.) On May 5, 2017, Mr. Hoffman filed his opposition. (Opp'n, Dkt. No. 93.) On May 12, 2017,
17 Defendant filed its reply. (Def.'s Reply, Dkt. No. 98.)

18 On June 1, 2017, the Court held a hearing, in which it ordered that Messrs. Hoffman,
19 Emma, Ilg, and Robinson appear in person. Mr. Hoffman, however, left the courtroom when the
20 Court began to address the incidents of his prior misconduct, approximately 10 minutes into the
21 hearing, and did not return. Prior to his departure, Mr. Hoffman sat at the counsel table with his
22 eyes closed and was rocking back and forth.

23 After the hearing, the Court ordered Ms. Beilke to file a supplemental declaration with Mr.
24 Hoffman's April 20, 2017 email attached, which she filed on June 6, 2017. (Suppl. Decl. of
25 Michele Bielke, "Suppl. Bielke Decl.," Dkt. No. 108.) On June 7, 2017, Mr. Hoffman filed a
26 supplemental declaration to explain the context of his email. (Suppl. Decl. of Michael Hoffman,
27 "Suppl. Hoffman Decl.," Dkt. No. 109.)
28 ///

## II. LEGAL STANDARD

District courts possess the "inherent procedural power to reconsider, rescind, or modify an interlocutory order" before entry of final judgment. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001); *see also* Fed. R. Civ. P. 54(b) (any order or decision which does not end the action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). Reconsideration is appropriate where "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also* Civil L.R. 7-9(b).

## III. DISCUSSION

Defendant seeks to introduce new or newly discovered evidence: (1) threatening voicemail left for Ms. Beilke on March 24, 2017; (2) evidence of Mr. Hoffman's prior conduct; and (3) evidence that Messrs. Emma and Ilg are competent to take and defend depositions in this matter. (Def.'s Mot. at 4-10.)

As an initial matter, and discussed in further detail below, the Court finds that Defendant exercised due diligence, such that the newly discovered evidence was not reasonably discoverable prior to the hearing.

### A. New evidence

#### i. Threatening Voicemail

The order on the motion for sanctions was issued on March 21, 2017, and *Law360* published an article about the order on the following day. (Beilke Decl. ¶ 4, Ex. A.) On March 24, 2017, Ms. Beilke received a voicemail message from an unknown number that explicitly threatened her. (Beilke Decl. ¶ 5, Ex. B.) The messaged stated, "You little cunt, I'm coming for you. You better watch your back." *Id.* This evidence is new, as it was left after the order was issued.

Mr. Hoffman denies any involvement in the threatening voicemail message. (Hoffman Decl. ¶ 4.) Notwithstanding, the Court finds Ms. Beilke's heightened concern for her safety

warranted. While there is insufficient evidence to attribute the voicemail, in light of the other facts in this case, the Court is very troubled by the particular language given the similarities to other expletives Mr. Hoffman has said in the past. *See* discussion *infra* Part III.A.ii.a ("cunt").

### ii. Mr. Hoffman's Prior Conduct

In opposition, Plaintiffs argue that the information pertaining to Mr. Hoffman's conduct was publicly available, and, therefore, the consideration of this evidence is improper. (Opp'n at 11-12.) The Court disagrees. Defendant exercised due diligence in its search for disciplinary actions against Mr. Hoffman prior to the hearing. (Def.'s Mot. at 5; Def.'s Reply at 5.) Specifically, Defendant searched Mr. Hoffman's State Bar of California record, and utilized Westlaw and Bloomberg Law, but did not find any record of prior discipline. (Def.'s Reply at 6-7, n. 4.) Defendant cannot be reasonably expected to scour the dockets of every court in California to find incidents of discipline. Accordingly, the Court finds that Defendant exercised due diligence and Mr. Hoffman's prior conduct may be considered.

#### a. *Reynoso v. State of California*

After the March 21 Order was issued, Defendant was told by a confidential source that, in 2008, a Sacramento County Superior Court judge issued a mistrial because Mr. Hoffman assaulted his female co-counsel in front of the jury. (Def.'s Mot. at 5-6; Order Granting the State of California's Mot. for Sanctions, *Reynoso v. State of California*, Case No. 05AS03030 (Cal. Super. Ct. Sept. 9, 2008), Dkt. No. 81-2; Beilke Decl. ¶ 8.) According to his former client, Silvia Reynoso, after assaulting his co-counsel, Mr. Hoffman continued to rage on her outside of the courthouse. (Letter from Sylvia Reynoso to Hon. Michael P. Kenny, "Reynoso Letter," at 2, *Reynoso v. State of California*, Case No. 05AS03030 (Cal. Super. Ct. Feb. 16, 2008), Dkt. No. 81-3; Beilke Decl. ¶ 8.) Ms. Reynoso described Mr. Hoffman screaming at his co-counsel and calling her names, such as "cunt" and "bitch." (Reynoso Letter at 2.) Ms. Reynoso provided that Mr. Hoffman "instilled fear into me," and that she hoped that Judge Kenny would "reconsider contacting the State Bar about him. I am afraid that if I complain to the Bar about him that he might retaliate against me. Mr. Hoffman is a very angry man." *Id.*

///

### b. *State Bar of California*, Case No. 08-O-14146

After the March 21 Order was issued, Defendant learned that Mr. Hoffman filed a complaint with the State Bar of California against his former co-counsel, Barbara Figari, due to an incident arising in part from the *Reynoso* matter. (Def.'s Mot. at 7; Beilke Decl. ¶ 13.) Defense counsel obtained a copy of Ms. Figari's response to Mr. Hoffman's complaint, which described Mr. Hoffman's behavior towards her. (Beilke Decl. ¶ 13, Ex. C.) The letter explains that after Mr. Hoffman failed to pay the court-ordered sanctions, and then failed to appear at an order of examination, a warrant was issued for his arrest. *Id.* at 4. Upon learning of the arrest warrant, the letter states that Mr. Hoffman "went into Ms. Figari's office, closing the door behind him. His face was flushed red and he started yelling at her in a state of rage. He stood directly between Ms. Figari and the door, preventing her from leaving the room." *Id.* The letter goes on to explain Mr. Hoffman's erratic behavior, including 40 minutes yelling at Ms. Figari, "You had better fucking fix this," "hit[ting] the back of Ms. Figari's chair with his hand in anger," and "continu[ing] to yell at Ms. Figari in an uncontrollable rage and [ ] throw[ing] things at her." *Id.* The conduct was so egregious that Ms. Figari hid in the bathroom for 20 minutes and proceeded to experience an anxiety attack. *Id.* at 4-5. This behavior resulted of Mr. Hoffman's own conduct, which led to a warrant for his arrest because he failed to obey a court order. *Id.* at 4.

### c. *Martinez v. Dynalectric Co.*

After the Order was issued, Defendant learned that Mr. Hoffman conducted himself in a very similar manner at multiple depositions in *Martinez v. Dynalectric Co.*, Case No. CGC-08-478110 (Cal. Super. Ct. 2010). (Def.'s Mot. at 7; Beilke Decl. ¶¶ 9-11; Dkt. No. 81-4.) Similar to the present case, Defendant's Motion for Appointment of Referee to Supervise Depositions and for Sanctions was granted and Mr. Hoffman was ordered to take depositions in the courtroom. (Def.'s Mot. at 7-8; Beilke Decl. ¶¶ 9-11; 6/4/09 Mini Minutes Order, Dkt. No. 81-4.)

### d. Sexual Battery allegations

After the Order was issued, Ms. Beilke was told by a confidential source that at least two women filed civil actions against Mr. Hoffman for gender violence, and in one case, additional

United States District Court
Northern District of California

causes of action for (1) assault, (2) battery, (3) intentional infliction of emotional distress; (4) sexual battery; (5) false imprisonment; (6) sexual assault and battery; and (7) negligent infliction of emotional distress. (Compl. at 4, ¶ 19, *Jane Doe v. Hoffman*, Superior Court of California, County of San Francisco, Case No. CGC-13-528939 (Cal. Super. Ct.), Dkt. No. 81-5; First Amended Cross-Compl. for Damages, *Hoffman v. Calder*, Superior Court of California, County of San Francisco, Case No. CGC 13-533961, Dkt. No. 81-6; Beilke Decl. ¶ 12. In *Jane Doe*, Plaintiff alleged that after Mr. Hoffman forced himself on her sexually and she attempted to run away, "Defendant [Hoffman] dragged JANE DOE back into the bedroom by her arm and began angrily and violently pulling her hair. He struck her on the side of her head and violently grabbed her breast. JANE DOE had multiple bruises from his beating." (Compl. at 4, ¶ 19, *Jane Doe v. Michael Robert Hoffman*, Case No. CGG-13-528939 (Cal. Super. Ct. Feb. 22, 2013), Dkt. No. 81-5.

After a bench trial, the court found Jane Doe's testimony credible, and that she "withdrew her prior consent to [Mr. Hoffman's] rough physical and sexual contact. (Statement of Decision After Court Trial at 4, *Jane Doe v. Michael Robert Hoffman*, Case No. CGG-13-528939 (Cal. Super. Ct. Apr. 2, 2014), Decl. of Michele J. Beilke ISO of Reply, "Beilke Reply Decl.," Dkt. No. 98-1, Ex. A.) The judge acknowledged that Mr. Hoffman "volunteered on cross-examination that he is probably a 'misogynist.' He testified that he often does not know his own strength and that during past sexual encounters, he can get 'primal' and 'out of his body.'" *Id.* at 3. The presiding judge further noted that Mr. Hoffman, on cross-examination, "was volatile and argumentative with Plaintiff's counsel. His answers were often long-winded, non-responsive, erratic, and angry." *Id.* Mr. Hoffman was found guilty of assault, battery, intentional infliction of emotional distress, sexual battery, gender violence, violation of Civil Code § 51.7, false imprisonment, and negligent infliction of emotional distress, and Plaintiff was awarded $25,000 in damages for past physical pain and suffering. *Id.* at 4-5.

        **iii.**    **Evidence that Co-Counsel are capable of taking and defending depositions**

At the hearing, Plaintiffs' counsel stated that Mr. Hoffman was the only attorney who could handle taking or defending depositions in this action. (Tr. 27:20-28:4.) In fact, Mr.

Hoffman stated that

> 10  if it's not going to be me [conducting the depositions], then
> 11  Shaon Robinson needs to find himself another lawyer because
> 12  these people that I work with in my office will not be doing
> 13  this work for Mr. Robinson. I can promise you that. It won't
> 14  happen that way.

(3/16/17 Tr. at 30:10-14.) Notwithstanding this representation, immediately after the undersigned granted Defendant leave to file the motion to reconsideration, Mr. Ilg sent defense counsel an email offering him and Mr. Emma to take and defend all depositions in exchange for stipulating to continue the deadlines related to the motion for class certification. (Def.'s Mot. at 9; Beilke Decl. ¶ 15, Ex. D.)

In opposition, Plaintiffs argue that Messrs. Emma and Ilg are not competent to take the depositions, and were only offered in a last ditch effort because

> the risk of further delays and distraction[,] while the June 2 deadline for class certification was looming[,] outweighed the risk inherent in having Mr. Emma and Mr. Ilg handle all further depositions, despite those attorneys' limited experience in conducting depositions and minimal expertise in the area of law relevant to Mr. Robinson's FEHA Claims.

(Opp'n at 8.) It is suspect that Mr. Ilg, as of May 5, 2017, suddenly has "very limited time to work on this matter," when he was offered to take depositions only 17 days earlier. (*See* Hoffman Decl. ¶ 8.) This explanation is simply not believable.

Additionally, after the hearing, Defendant located Mr. Emma's resume on his individual website, which states that his professional experience in employment law litigation includes taking depositions. (Def.'s Mot. at 9; Beilke Decl. ¶¶ 16-17, Exs. E & F.) Defendant notes that Mr. Emma deposed an expert witness in a class action employment matter in which Mr. Hoffman was class counsel. (Def.'s Mot. at 9 (citing *Brewer v. General Nutrition Corp.,* Case No. 11-cv-03587-YGR (N.D. Cal.), ECF 236-2, 236-10); Beilke Decl. ¶ 20.)

Defendant also located Mr. Ilg's individual website, ILG Legal Office, PC, which states that he is an "award-winning employment and consumer attorney." (Def.'s Mot. at 10; Beilke Decl. ¶ 22, Ex. H at 3.) The Hoffman Employment Lawyers website states that Mr. Ilg previously worked at a class action law firm "where he litigated high-profile employment claims in State and federal courts throughout California. He currently specializes in wage and hour, wrongful

8

termination, and discrimination claims." (Def.'s Mot. at 10; Beilke Decl. ¶ 18-19, Ex. G at 8.)

Plaintiffs argue that reconsideration of whether co-counsel is competent to take and defend depositions is improper, because the evidence regarding the website information was available prior to the hearing. (Opp'n at 13.) This argument fails for two reasons. First, Plaintiffs' opposition to the original motion for sanctions did not address the alleged incompetency of Messrs. Emma and Ilg, which was raised for the first time at the hearing. (*See* Dkt. No. 64 at 18.) It instead focused on why Mr. Hoffman should not be sanctioned. *Id.* Second, Defendant could not have anticipated that Plaintiffs would argue at the hearing that Messrs. Emma and Ilg were not competent to take and defend depositions, which, for the record, is demonstrably false. Accordingly, the Court finds that Defendant was not dilatory in failing to look up the attorneys' qualifications on their respective websites prior to the March 16, 2017 hearing.

In light of the foregoing, as offered in the April 18, 2017 email, the Court finds Messrs. Emma and Ilg competent to take and defend depositions.

### B. Appropriate Relief

Based on information not easily available at the time of the hearing on the motion for sanctions, Defendant seeks monetary sanctions for the instant motion for reconsideration, and that Mr. Hoffman be precluded from conducting or defending depositions in this action. (Def.'s Mot. at 11-15.)

#### i. Monetary sanctions

Defendant seeks additional monetary sanctions against Michael Hoffman and Leonard Emma for stating at the March 16, 2017 hearing that Mr. Emma and Mr. Ilg were not capable of taking or defending depositions in the present case, and later offering them to do just that. (Def.'s Mot. at 15.) As an initial matter, the Court finds that sanctions against Mr. Emma are not appropriate, as he was not the subject of the original motion for sanctions.

Title 28 U.S.C. § 1927 authorizes sanctions against "[a]ny attorney or other person admitted to conduct cases in any court of the United States [.]" Section 1927 sanctions can only be imposed upon individual attorneys. *Kaass Law Firm v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293-94 (9th Cir. 2015) (citations omitted). For Section 1927 sanctions, "[t]he key term in the

statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). A "finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, and a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *Id.* (citations omitted). "[W]ith § 1927 as with other sanctions provisions, [d]istrict courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012) (internal quotation marks and citation omitted).

Here, Mr. Hoffman represented to the Court that he was the only attorney in his firm qualified to take or defend depositions in this lawsuit. (Tr. 27:20-28:4.) Mr. Emma essentially confirmed Mr. Hoffman's representation without affirmatively stating that he was incapable of taking or depending depositions:

```
20    THE COURT: But you -- so you're capable of taking
21  the deposition but just not in this case because this is not
22  your area of expertise.
23    MR. EMMA: I don't -- I don't -- I rarely take any
24  depositions, Your Honor.
25    THE COURT: What do you do?
 1    MR. EMMA: I do written discovery.
 2    THE COURT: That's it?
 3    MR. EMMA: Written discovery. I deal with clients.
 4  I attend -- attend mediations.
 5    THE COURT: Okay.
 6  All right. And is there anyone else in your office who
 7  could take depositions, defend depositions?
 8    MR. EMMA: No, Mr. -- Mr. Hoffman is the deposition
 9  attorney, and -- and in -- and this is in a single firm with
10  partners and associates in this co-counsel relationship.
11    THE COURT: Hmm.
12  Okay. All right. Thank you.
13  So that doesn't sound like an option.
```

(Tr. 39:20-40:13.)

In opposition, Plaintiffs argue that the statements at the hearing do not provide a basis to impose further sanctions, because Plaintiffs' counsel was forthright about their respective qualifications. (Opp'n at 17.) Specifically, Plaintiffs argue that "Mr. Emma did not say he had never taken a deposition, but truthfully stated that he rarely takes depositions." *Id.* While true, Mr.

10

Emma also answered "no," when asked by the Court if there was "anyone else in your office who could take depositions, defend depositions?" (Tr. 40:8-10.) Now, Plaintiffs are attempting to reframe Mr. Emma's representation at the hearing as him lacking expertise and experience with FEHA claims. (Opp'n at 17 (citing Tr. 38:24-25; Emma Decl. ¶ 6.)) This "interpretation" is inaccurate, because, when reviewed in the context of the full transcript, it is clear the Mr. Emma is discussing the type of discovery he typically performs rather than specific legal claims:

> 16   **THE COURT:** And are you an attorney in the firm where
> 17 Mr. Hoffman is an attorney? Are you partners? What's your
> 18 relationship?
> 19   **MR. EMMA:** We -- We co-counsel on cases.
> 20   **THE COURT:** Okay. Are you capable of taking a
> 21 deposition?
> 22   **MR. EMMA:** Not -- Not in this matter.
> 23   **THE COURT:** Not in this --
> 24   **MR. EMMA:** This is -- No, not as to Mr. Robinson's
> 25 claims.
> 1   **THE COURT:** Can you tell me why?
> 2   **MR. EMMA:** It's -- It's not my area of expertise.
> 3 I -- I handle written discovery, Your Honor.
> 4   **THE COURT:** Okay.
> 5 Defense counsel just said that you had been offered
> 6 before.
> **7   MR. EMMA:** There was -- Yes, there was -- there was
> 8 disagreement about whether the depositions could or should
> 9 proceed.

(Tr. 38:16-39:9.) Indeed, Mr. Emma has handled the written discovery in this case, so he has some experience with FEHA claims. As a member of the State Bar of California, and as, in Mr. Hoffman's own words, a "wage and hour expert," Mr. Emma is surely more than capable of taking or defending a deposition. Indeed, as discussed above, Mr. Emma was offered to Defendant in an attempt to resolve this very motion. *See* discussion *supra* Part III.A.iii. Thus, Plaintiffs' claim that Mr. Emma is not competent to take or defend depositions in this case are disingenuous, and Mr. Hoffman intentionally misled the Court. Furthermore, Mr. Hoffman told the Court that he would file a motion for substitution of counsel if he were precluded from taking or defending depositions, which was also untrue, because Messrs. Emma and Ilg were offered less than one month after the March 21 Order was filed.

At the hearing, special counsel for Mr. Hoffman argued that Mr. Hoffman did not intend to mislead the Court when he said that his co-counsel were not competent to take and defend

11

United States District Court
Northern District of California

depositions. Rather, Mr. Hoffman intended to convey that he is more skilled in litigating discrimination cases. This argument is not well taken for the reasons set forth above.

To the extent that Mr. Hoffman complains that this relief could have been granted if Defendants had merely stipulated to an extension to the motion for class certification deadlines is irrelevant. (Opp'n at 14; Hoffman Decl. ¶ 9.) Discovery abuses and professional misconduct need not be remedied via stipulation where there are strings attached. If Mr. Hoffman wanted to resolve this motion without court intervention, he should have offered Messrs. Emma and Ilg without seeking an extension of the class certification deadlines in return.

Accordingly, the Court finds that Mr. Hoffman is subject to sanctions under § 1927 for recklessly or intentionally misleading the court, which resulted in the multiplication of the proceedings.

### a. Amount of Sanctions

Defendant seeks monetary sanctions in the amount of $12,112.50 against Messrs. Hoffman and Emma for attorneys' fees and costs incurred by Defendant in filing the motion for leave and the motion for reconsideration. (Def.'s Mot. at 15.) As stated above, Defendant may not recover sanctions against Mr. Emma. The undersigned finds that monetary sanctions against Mr. Hoffman are appropriate given the misrepresentations he made to the Court.

Sonya D. Goodwin is an attorney at Reed Smith, who graduated from University of California, Los Angeles School of Law in 2011. (Decl. of Sonya D. Goodwin, "Goodwin Decl.," Dkt. No. 85-11 ¶ 4.) She has experience in all aspects of state and federal employment litigation. *Id.* Her hourly billing rate is $350.00 per hour, and she spent fifteen hours preparing the motion for leave, the underlying motion, and supporting documents, and expected to spend three hours on the reply, which totals $6,300.00 in attorneys' fees. (Goodwin Decl. ¶ 2.) The Court finds that Ms. Goodwin's billing rate and amount of time spent are both reasonable under the circumstances.

Julia Y. Trankiem is a partner at Reed Smith, and graduated from University of Michigan School of Law in 2003, and she has experience in all aspects of state and federal employment litigation. (Goodwin Decl. ¶ 5.) Her hourly billing rate is $525.00. (*Id.* at ¶ 3.) Ms. Trankiem seeks reimbursement for ten hours of her time spent preparing the motion for leave, the underlying

12

motion, and supporting documents, which totals $5,250.00 in attorneys' fees. *Id.* The Court finds Ms. Trankiem's hourly rate is reasonable, but that the time spent is unreasonable in light of the fact that Ms. Goodwin's billed fifteen hours on the same tasks. Instead, the Court finds that five hours is reasonable under the circumstances, and awards $2,625.00.

Ms. Beilke is a partner at Reed Smith, and graduated from University of Southern California School of Law in 1997, and she has experience in all aspects of state and federal employment litigation. (Beilke Decl. ¶ 23.) Her hourly billing rate is $562.50. *Id.* Ms. Beilke seeks reimbursement for one hour of her time to be spent at the hearing on this motion. The Court finds Ms. Beilke's hourly rate and amount of time spent reasonable under the circumstances.

Accordingly, the Court awards Defendant $9,487.50 in sanctions to be payable by Mr. Hoffman.

### ii. Mr. Hoffman is precluded for taking or defending depositions.

In light of the newly discovered evidence, Defendant requests that Mr. Hoffman be precluded from taking or defending depositions in this case. (Def.'s Mot. at 11-13) Defendant points out that it, too, has the right to choose its counsel, and contends that, in light of the new evidence, lead counsel Michele J. Beilke rightfully fears for her safety. (Def.'s Mot. at 1, 9.)

Courts in this district apply California law when deciding issues pertaining to the conduct of counsel. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004)(disqualification of counsel). In the disqualification context, "the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar. Consequently, the recognizably important right to choose one's counsel must yield to the ethical considerations that embody the moral principles of our judicial process." *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1428 (1999)(citing *Comden v. Superior Court*, 20 Cal. 3d 906, 915 (1978)). When deciding whether disqualification is warranted,

> [t]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within

13

        our adversary system requires vigorous representation of parties by
        independent counsel unencumbered by conflicts of interest.

*Concat LP v. Unilever*, PLC, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004)(quoting *Allen v. Academic Games Leagues of Am.*, 831 F.Supp. 785, 789 (C.D. Cal. 1993)). While the undersigned would not be disqualifying Mr. Hoffman from the case in its entirety, the framework will assist the Court in determining the propriety of precluding Mr. Hoffman from participating in depositions. Here, the Court finds that Plaintiffs would not be denied their right to counsel of choice, because Messrs. Emma and Ilg are already attorneys of record, and Mr. Hoffman would not be fully removed from representing Plaintiffs. The Court notes that, while Plaintiffs may believe that it is in Mr. Robinson's interest for Mr. Hoffman to defend his deposition and handle all depositions of significant witnesses in this case, Mr. Hoffman failed to make a single objection that was proper during Mr. Robinson's January 12, 2017 deposition. (*See* 3/21/17 Order at 9.) Instead, Mr. Hoffman did his client a monumental disservice and created the situation that he now claims is delaying this case. (*See* Decl. of Michael Hoffman, "Hoffman Decl.," Dkt. No. 94 ¶ 10.)

    At the hearing, Mr. Hoffman's counsel argued that the exclusion of Mr. Hoffman from depositions would be career killing, because clients would not hire an attorney who could not take depositions. At the March 16, 2017 hearing, however, Mr. Hoffman said that this would likely be his last case:

> 18 **MR. HOFFMAN:** I'll be perfectly honest with you, Your
> 19   Honor. This is my last case.
> 20 **THE COURT:** This is your last case?
> 21 **MR. HOFFMAN:** I think so. Mr. Robinson has kept
> 22   me -- Mr. Robinson has kept me in the game because of my
> 23   strong feelings for him, so he's actually kept me, believe it
> 24   or not, in -- in this whole business when I'm kind of done.

(Tr. 29:18-24.) Nonetheless, exclusion from depositions is not tantamount to disqualification, given that, if the class is certified, there is no guarantee that Mr. Hoffman would be appointed class counsel. The remaining factors do not apply, because there is neither a conflict of interest nor tactical abuse, as Mr. Hoffman's own misconduct gave rise to this situation. Moreover, this order does not apply to any of Mr. Hoffman's current or future cases.

    In opposition, Plaintiffs argue that Mr. Hoffman's prior conduct should have no bearing, because it would be tantamount to punishing Mr. Hoffman twice for such allegations and

punishing Plaintiffs, because they would be denied lead counsel of their choice. (Opp'n at 16-17.) As stated above, Plaintiffs are not being denied the lead counsel of their choice, as Mr. Hoffman remains their lead counsel of record.

Moreover, the Court denied Defendant's original request to preclude Mr. Hoffman from participating in depositions based on Mr. Hoffman's false representation that no other attorney in his office could competently take or defend depositions, and because it was unaware that Mr. Hoffman had previously been ordered to take depositions in a courthouse due to similar behavioral problems. In light of the *Martinez* case, it is apparent that the prior court order requiring that depositions occur in a courtroom did not result in a marked improvement in Mr. Hoffman's behavior or professional conduct, rendering his recent promise that examinations in the courthouse would improve his behavior to ring untrue. (*See* Tr. 32:13-19.) Furthermore, that Mr. Hoffman is a self-described misogynist with a history of violence against women does not elicit confidence that he is capable of controlling himself when faced with any sort of adversity, and litigation, by its very nature, is adversarial. At a minimum, had the information regarding the *Martinez* case or that his co-counsel were competent to conduct and defend depositions been available to the undersigned at the time the March 21, 2017 order was issued, the Court would have precluded Mr. Hoffman from taking, defending, or otherwise attending any deposition in this case.

Additionally, Mr. Hoffman's conduct since the March 16, 2017 hearing makes it evident that he does not believe that his conduct was extreme or outrageous. At the hearing, Ms. Beilke informed the Court that Mr. Hoffman sent her an email after the Court granted leave to file the motion for reconsideration where he characterized the sanctions bid as theatrical. Given the serious nature of this sanctions proceeding, the Court ordered Ms. Beilke to file a supplemental declaration with the email, and email chain, attached. Mr. Hoffman's email, in whole, was as follows:

> Ms. Bielke-
>
> Tell your client [that] it's [sic] proposal[1] is rejected as unethical.

---

[1] Ms. Beilke's proposal was that the "only proposal the Company will consider is a stipulation to dismiss the lawsuit in its entirety." (Suppl. Beilke Decl., Ex. A at 1.) While perhaps untenable, it is

15

> We will see you in Court and then all the way to jury trial in this case as your defamatory and theatrical motions will absolutely not result [in] your client [] escap[ing] liability for its unlawful and racist actions. In the end[,] I promise you that your client will pay much more money because of what you are doing.
>
> Very truly,
> Michael Hoffman

(4/20/17 Email, Suppl. Beilke Decl., Ex. A at 1.) In hindsight, Mr. Hoffman claims that the email

> was not in response to the Court's Sanctions Order, or a reflection that I do not appreciate the seriousness of that Order. Rather, my email was in response to Defendant's demand that Plaintiff Shaon Robinson dismiss his case in exchange for me avoiding the continued sanctions proceedings, which I believed to be unethical.

(Suppl. Hoffman Decl. ¶ 2.) To the contrary, the email clearly characterizes the sanctions motions as "defamatory and theatrical," and Mr. Hoffman threatens to penalize Ms. Beilke's client for pursuing sanctions. The Court notes that the use of the word "theatrical" to describe a legitimate motion for sanctions filed by a female attorney is clearly a gendered attack, which will not be tolerated by this court.

As troubling, the email also indicates that Mr. Hoffman did not believe that his conduct was wrong, and, as Ms. Beilke argued at the hearing, given that it was written in the wake of the order requiring that depositions occur in the courthouse, it also shows that the courthouse sanction was not sufficient to ameliorate the misbehavior that it was meant to remedy.

Lastly, Defendant's right to the counsel of its choice, Ms. Beilke, who was visibly shaken and in fear for her personal safety due to Mr. Hoffman's abusive behavior, also weighs in favor of excluding him from depositions. The Court finds Mr. Hoffman's behavior at the June 1 hearing was alarming. Mr. Hoffman sat at the counsel table with his eyes closed and rocking back and forth before leaving the courtroom and not returning, despite a court order requiring his presence at the hearing. At the very least, this indicates that Mr. Hoffman has an aversion to being held accountable for his actions, and, at worst, suffers from some degree of mental instability. Mr. Hoffman is fortunate that the undersigned declines to hold him in contempt of court for leaving a hearing that he was required to attend.

---

not *per se* unethical.

In light of the foregoing, the Court grants Defendant's motion for reconsideration and precludes Mr. Hoffman from being present at depositions in this case.

### C. Referral to the State Bar of California

On March 21, 2017, the undersigned referred Mr. Hoffman to the Court's Standing Committee on Professional Conduct for disciplinary proceedings pursuant to Civil Local Rule 11-6(e), and advised him that any similar conduct going forward will be reported to the State Bar of California. (3/21/17 Order at 19.) It has since come to light that Mr. Hoffman was not forthright with the undersigned regarding the competencies of his co-counsel. Mr. Hoffman's misrepresentations are troubling, and, coupled with his extensive record of unprofessional conduct, his animus towards women, his gender violence, his unwillingness to take responsibility for his actions, his disrespect for the Court, and his extremely odd behavior in court, warrant that he be reported to the State Bar of California's Committee on Professional Responsibility and Conduct.

### IV. CONCLUSION

In light of the foregoing, Defendant's motion for reconsideration is GRANTED, and Mr. Hoffman is precluded from taking, defending, or otherwise being present at any depositions in this lawsuit. Furthermore, the Court awards $9,487.50 in sanctions against Mr. Hoffman personally, to be paid within 14 days of this order.

Additionally, Mr. Hoffman is referred to the State Bar of California's Committee on Professional Responsibility and Conduct.

IT IS SO ORDERED.

Dated: June 16, 2017

KANDIS A. WESTMORE
United States Magistrate Judge