UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAON ROBINSON,<br>　　　　　Plaintiff,<br>　　v.<br>THE CHEFS' WAREHOUSE, INC., et al.,<br>　　　　　Defendants. | Case No. 3:15-cv-05421-RS　(KAW)<br>**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br>Re: Dkt. No. 243 |

On June 24, 2019, Plaintiffs filed an ex parte application for a temporary restraining order barring contact with class members regarding the lawsuit and a motion for preliminary injunction. (Pls.' Mot., Dkt. No. 243.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES Plaintiffs' motion for preliminary injunction.

## I.　BACKGROUND

Plaintiffs Shaon Robinson, Sean Clark, Saul Prado, and James Robert assert individual and class action claims against Defendant The Chef's Warehouse West Coast, LLC, alleging wage and hour violations, as well as various discrimination claims. The proposed class consists of "[a]ll persons employed by Defendant [ ] in the State of California as a Driver or Driver Trainer at any time on or after October 26, 2011." (Fifth Am. Compl., Dkt. No. 183-1 at 5 ¶ 26.)

In June 2019, Defendant decided to offer individual settlements to putative class members who were former drivers. (Def.'s Opp'n at 3; Decl. of Alejandro Gonzalez, "Gonzalez Decl.," Dkt. No. 251-2 ¶ 2.) Defendant claims to have not contacted current employees to settle their claims. (Def.'s Opp'n at 3.) In preparing to offer settlement, Defendant contracted with attorney

Alejandro Gonzalez, and created a call list spreadsheet containing contact information for approximately 100 former drivers. (Def.'s Opp'n at 3; Gonzalez Decl. ¶¶ 1, 5.) Defendant provided the callers with the spreadsheet, which was accessible to all of the callers to update in real time. (Gonzalez Decl. ¶ 5.) Some of the individuals on the spreadsheet were marked "do not call." *Id.* Gonzalez was unaware of the reasons the individuals were designated "do not call." *Id.*

On June 20, 2019, the callers began making calls. (Def.'s Opp'n at 4; Gonzalez Decl. ¶ 6.) The callers were provided with a script to follow, English and Spanish versions of a release agreement, and answers to frequently asked questions. (Def.'s Opp'n at 3; Gonzalez Decl. ¶ 3.)

Defendant contends that the script required callers to first state that they worked for the Chefs' Warehouse and the purpose of the call. (Def.'s Opp'n at 3; Gonzalez Decl. ¶ 4.) The script also purportedly required the callers to confirm that individuals were not represented by counsel prior to continuing the conversation beyond a brief introduction. *Ids*. Per the script, the callers provided background information regarding the lawsuit, identified the putative class action claims, and the upcoming class certification hearing date. (Gonzalez Decl. ¶ 4.) The script required the callers to make it clear that there was no obligation to accept the offered settlement. *Id.* It also made clear that acceptance of the settlement offer meant giving up any claims in the case, and instructed individuals to read the release carefully before exercising their voluntary right to accept. *Id.* Also, upon request, the callers provided contact information for Plaintiffs' counsel. *Id.*

Defendant also prepared an email to send to the former drivers if they were not reachable by telephone or as follow-up to telephone calls, which was in both English and Spanish. (Def.'s Opp'n at 3; Gonzalez Decl. ¶ 3.)

Defendant claims that shortly after calling commenced, the formatting of the spreadsheet was altered by one of the callers. (Def.'s Opp'n at 4; Gonzalez Decl. ¶ 6.) Gonzalez attempted to reformat the document, and inadvertently removed the "do not call" tag from Plaintiff Prado. (Gonzalez Decl. ¶ 6; Def.'s Opp'n at 4.) On June 20, 2019, at 11:02 PM EDT (8:02 PM PDT), Gonzalez left Prado a voicemail message regarding the proposed settlement. (Gonzalez Decl. ¶ 6; Decl. of Stephen Noel Ilg, "Ilg Decl.," Dkt. No. 244 ¶ 20, Ex. 8; Decl. of Saul Prado, "Prado Decl.," Dkt. No. 245 ¶ 3.) Prado called Gonzalez back at 11:33 PM EDT (8:33 PM PDT) and left

a voicemail asking Gonzalez to return his call. (Gonzalez Decl. ¶ 6, Ex. A.)

On June 21, 2019, at 12:03 PM EDT (9:02 AM PDT), Gonzalez received another call from Prado, which Gonzalez again missed. (Gonzalez Decl. ¶ 7.) Gonzalez called Prado that same afternoon at 12:39 PM EDT (9:39 AM PDT), and reached him. (Gonzalez Decl. ¶ 7; Prado Decl. ¶ 3.) It is undisputed that Gonzalez identified himself as an attorney for Defendant. (Prado Decl. ¶ 3.) Defendant contends that, in accordance with the script, Gonzalez introduced himself and, before engaging in settlement discussions, asked Prado if he was represented by counsel. (Def.'s Opp'n at 4; Gonzalez Decl. ¶ 7.) Defendant contends that Prado said that he was not represented, so Gonzalez continued with the conversation. *Ids.* During the course of the six minute and twenty-nine second conversation, Prado stated that he sat for his deposition and that he wanted the case to be over. (Gonzalez Decl. ¶ 7.) Based on these comments, Gonzalez claims to have again asked if Prado was represented by counsel and Prado again denied being represented. *Id.* Prado's initial declaration did not address whether he was asked if he was represented, but his second declaration filed in support of Plaintiffs' reply brief states that he was questioned about the case after having informed Gonzalez that he had his own attorney. (*See, generally,* Prado Decl.; 2d. Decl. of Saul Prado, "2d. Prado Decl.," Dkt. No. 251-1 at 14 ¶ 3.)

While Gonzalez was speaking with Prado, Chris Parkin, Vice President of Litigation for The Chefs' Warehouse, was reviewing the spreadsheet and noticed that Prado was called. (Gonzalez Decl. ¶ 8.) Parkin immediately notified Gonzalez that Prado was a named plaintiff who should not have been contacted under any circumstances. *Id.* Upon hearing this, Gonzalez immediately discontinued the call. *Id.* Gonzalez claims that he did not know that Prado was a named plaintiff prior to being informed by Parkin. (Def.'s Opp'n at 4; Gonzalez Decl. ¶ 8.) Later that day, Prado called Gonzalez again, but Gonzalez declined further discussions, and the phone call lasted less than one minute. (Gonzalez Decl. ¶ 9, Ex. B.) Defendant contends that neither it nor anyone working for it, including outside counsel or contract attorneys, has contacted Prado or any other named plaintiff since. (Gonzalez Decl. ¶ 9; Def.'s Opp'n at 4.)

On June 21, 2019, Gonzalez called former driver Jonathan Villegas and left a voicemail message. (Def.'s Opp'n at 4; Gonzalez Decl. ¶ 10.) Villegas did not call back, so, on June 22,

3

2019, Gonzalez sent a pair of emails to Villegas, one through Adobe EcoSign containing a proposed settlement agreement and the second from his own email account explaining the Adobe EcoSign email in both English and Spanish and to assure the recipient that it was not spam. (Gonzalez Decl. ¶ 10.) Later that day, due to a purported technical error, Gonzalez sent Villegas two emails at 9:46 PM EDT and 9:48 PM EDT. *Id.* All of the emails Villegas received were in both English and Spanish. *Id.* On June 24, 2019, Gonzalez spoke with Villegas, and ascertained that he spoke fluent English. (Gonzalez Decl. ¶ 10.) During the call, Villegas asked for Plaintiff's counsel's contact information, which Gonzalez provided. (Def.'s Opp'n at 5.)

On June 24, 2019, Plaintiffs' counsel Stephen Ilg contacted Gonzalez to discuss the settlement offered to Prado. (Gonzalez Decl. ¶ 11.) Gonzalez told Ilg that he was a contract attorney for the Chefs' Warehouse and confirmed that he spoke with Prado the previous week. *Id.* Shortly thereafter, Ilg called Gonzalez again and asked what he had discussed with Defendant's outside counsel Michele Beilke. *Id.* Gonzalez stated that the only person he understood to be in a position to speak about the matter was Parkin. *Id.*

Upon hearing about this sequence of events, on June 24, 2019 at 1:51 PM PDT, Beilke emailed Ilg and explained that Prado was inadvertently called and that Gonzalez had no knowledge that he was a represented party at the time that he called. (Decl. of Michele J. Beilke, "Beilke Decl.," Dkt No. 251-1 ¶ 2, Ex. A.) Ilg responded at 8:11 PDT, stating that he was immediately filing the *Ex Parte* Application for Preliminary Injunction. (Beilke Decl. ¶ 3, Ex. A.)

On June 24, 2019, Plaintiffs filed an ex parte application for a temporary restraining order and a motion for preliminary injunction. (Pls.' Mot., Dkt. No. 243.) On June 25, 2019, the district court referred the ex parte application and motion to the undersigned. (Dkt. No. 250.)

On June 26, 2019, Defendant filed an opposition. (Def.'s Opp'n, Dkt. No. 251.) On June 27, 2019, Plaintiffs filed a reply. (Pl.'s Reply, Dkt. No. 252.)

On July 2, 2019, the undersigned issued an order setting the hearing on Plaintiffs' motion for preliminary injunction, but declined to grant the ex parte application for a temporary restraining order. (Dkt. No. 255.)

## II. LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The party seeking an injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

## III. DISCUSSION

In deciding a motion for preliminary injunction, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted). In fact, "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction." *Id.* at 22.

### A. Contact with Class Members

Here, Defendant has been contacting putative class members in attempts to settle their individual claims and reduce the size of the potential class. While Plaintiffs would surely prefer that this not occur, the conduct is legal. *See, e.g., Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 798, 803 (2009) (Employers may obtain releases of claims from putative class members via individual settlements.); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 92, 104 (1981) (court order banning communications between parties and actual and putative class members was abuse of discretion). In Defendant's attempts to contact putative class members by telephone, Gonzalez inadvertently called Prado, who, as a named plaintiff, is represented by counsel. (Def.'s Opp'n at 11.) Gonzalez, however, as a contract attorney, was not aware that Prado was represented, let

alone a named plaintiff. (Def.'s Opp'n at 11; Gonzalez Decl. ¶ 8.) Upon learning of the mistake, Defendant has taken steps to minimize the possibility of future inadvertent contacts by removing all four named plaintiffs from the former employee class list, and by ensuring the accuracy of the existing "do not call" tags. (Beilke Decl. ¶ 2; Gonzalez Decl. ¶ 8.)

In the motion, Plaintiffs' counsel seeks to provisionally certify the class with a "no contact" order for all putative class members, and to be appointed as interim class counsel. (Pls.' Mot. at 10-11.) This is an extreme remedy that is unwarranted for several reasons. First, as discussed above, Defendant's contacts with putative class members is legal. Second, Defendant has already taken steps to ensure that represented parties are not contacted by removing the named plaintiffs from the list and double-checking the accuracy of the "do not call" tags. Furthermore, the script provided asks individuals if they are represented, and, if they answer affirmatively, the call is ended. (Def.'s Opp'n at 3; Gonzalez Decl. ¶ 4.)[1] This is sufficient to guard against improper contact with represented parties. Indeed, it would be unreasonable to hold Defendant responsible for an improper contact that went forward because a class member, putative or otherwise, was dishonest about whether they were represented by counsel.[2]

Accordingly, Plaintiffs will not suffer irreparable injury if a "no contact" order is not entered, and the motion for preliminary injunction is denied.

**B. Disqualification of Gonzalez is also unwarranted.**

Plaintiffs also seek to disqualify Gonzalez and his firm Virtual Legal Solution, and enjoin him from talking to Defendant or its outside counsel. (Pl.'s Mot. at 14.) Plaintiffs argue that they will be irreparably harmed, because Prado "explicitly discussed what he found most difficult about the case and most difficult about answering questions at a deposition." *Id.* at 15. While the Court is sympathetic to Plaintiffs' position, there is no evidence that Gonzalez knew that Prado was represented, and knowledge of representation is required to violate attorney ethics rules. *See*

---

[1] The Court understands that the parties dispute whether putative class members are asked if they are represented. The Court is confident that, going forward, all contacted potential class members will be asked prior to any substantive discussion of the case or offers of settlement.
[2] The Court takes no position on whether Prado informed Gonzalez that he was represented by counsel.

California Rule of Professional Conduct 4.2.

In reply, Plaintiffs' argue that inadvertence is no excuse, because Defendant should not have had Prado on the contact list in the first place, and it is responsible for the contact made at its direction. (*See* Pls.' Reply at 5.) While Defendant is now well aware that it made a mistake in including the named plaintiffs on the list even with a "do not call" designation, no apparent harm was done due to the improper contact.

Accordingly, Gonzalez was not in clear violation of any ethical rules by inadvertently communicating with Prado, so his disqualification is unwarranted.

### C. Discovery of putative class member information

On March 3, 2017, the undersigned ordered Defendant "to produce the names, home addresses, phone numbers, email addresses, and job title(s)" for the entire putative class. (Dkt. No. 72 at 4.) Defendant has an obligation under Rule 26 to supplement its discovery responses. Plaintiffs argue that the putative class contact list they were provided is not current. (Pl.'s Mot. at 1; Pl.'s Reply at 1.) For example, putative class member Jonathan Villegas, who was contacted by Gonzalez, was not disclosed despite the prior court order. (Pl.'s Mot. at 1.)

Defendant is reminded of its responsibility under Rule 26, and is ordered to provide an updated putative class list with all of the requisite information within **7 days** of this order. It is unjust for Defendant to contact putative class members unknown to Plaintiffs, and to do so in violation of a court order. To assist in remedying Defendant's apparent discovery violation, Defendant shall refrain from contacting any putative class members until 7 days after the updated contact list is produced, which will provide Plaintiffs with time to contact putative class members without competition from Defendant.

### D. Discovery of information about contacts with putative class members

Additionally, Plaintiffs seek to compel the production of information obtained by Defendant regarding the contacts with all putative class members, including copies of the settlement agreements transmitted to putative class members. (Pls.' Mot. at 13-14.) To the extent that Plaintiffs' request copies of settlement agreements and discussion with unrepresented, putative class members, these are privileged and shall not be produced. Notwithstanding,

Defendant is ordered to produce information regarding its communications with Prado, and shall do so within 7 days of this order.

Additionally, given that Defendant has not supplemented its putative class member contact list, *see* discussion, *supra,* Part III.C, Defendant's updated contact list shall be annotated to identify which putative class members have executed settlement agreements.

## IV. CONCLUSION

In light of the foregoing, Plaintiffs' motion for preliminary injunction is DENIED. Within 7 days of this order Defendant shall produce an updated contact list for all putative class members, as well as information pertaining to its communication with Prado. Additionally, Defendant must wait 7 days after the updated list is produced before it resumes contacting putative class members.

IT IS SO ORDERED.

Dated: July 17, 2019

KANDIS A. WESTMORE
United States Magistrate Judge